UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MELVIN BENNERMAN,

                Petitioner,

                                         **CASE NO. 2:06-CV-15463**

v.                                     **HONORABLE ARTHUR J. TARNOW**

CAROL HOWES,

                Respondent.

_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

      Melvin Bennerman ("Petitioner"), a state prisoner currently confined at the Lakeland

Correctional Facility in Coldwater, Michigan, has filed a pro se application for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  On June 10, 2002, Petitioner pled guilty in Wayne County

Circuit Court to second-degree murder, M.C.L. § 750.317, in connection with the stabbing death

of his wife.  Petitioner pled pursuant to a plea agreement under which the prosecutor dismissed a

first-degree murder charge.  At the June 26, 2002, sentencing hearing, Petitioner indicated that

he wished to withdraw his guilty plea.  The trial court denied Petitioner's request to withdraw his

plea and sentenced Petitioner to a forty to sixty-year term of imprisonment pursuant to the terms

of the plea agreement.  Petitioner alleges that he is entitled to habeas relief because his trial

counsel and appellate counsel provided constitutionally deficient assistance, the trial court

improperly denied his request to withdraw his plea, and the state improperly withheld

information.  Because Petitioner's claims lack merit, this Court **DENIES** the petition for a writ

of habeas corpus.

# I. BACKGROUND

The evidence against Petitioner was uncontradicted and overwhelming. The murder took place on February 18, 2001 at the residence of Barbara Duncan who is Petitioner's cousin. Petitioner and his wife, the victim LaDonna Bennerman, were at Ms. Duncan's residence along with Ms. Duncan, Ms. Duncan's sister DeLois Nicholson, and Ms. Nicholson's two daughters, niece and nephew. For months preceding the murder, Petitioner had been telling family that he was going to kill his wife who had been unfaithful and had a child with another man. And he did. According to Ms. Nicholson's eyewitness testimony at the July 31, 2001 preliminary examination and the stipulated testimony of the Assistant Wayne County Medical Examiner, Petitioner and the victim went into a back bedroom where Petitioner killed his wife by stabbing her forty-seven times in addition to cutting her twenty-six times. Ms. Nicholson testified that she witnessed Petitioner attacking his wife and he told her to leave the room. Ms. Nicholson ran to get help and upon returning saw Petitioner leaving the bedroom where the attack had taken place and proceeding to the kitchen where he calmly washed his hands, which were covered in blood. Ms. Nicholson checked on the victim and then exclaimed to Petitioner that he had killed her. Ms. Nicholson testified that Petitioner returned to the bedroom, examined his wife who remained barely alive, stated that he had not killed the victim, and then plunged a knife into her chest. At that point, Petitioner returned to the kitchen and resumed washing his hands. At the plea hearing, Petitioner admitted that he lured his wife to the bedroom where he stabbed her and that he acted with pre-meditation and the intent to kill her. Plea Tr., pp. 7-8 (6/10/02).

After sentencing, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals in which he raised two issues:

1.      The trial court abused its discretion in denying defendant's request to withdraw his guilty plea.  Defendant was under the effect of psychotropic drugs at the time of his plea rendering the plea involuntary, unintelligent and unknowing.

2.      Petitioner was denied the effective assistance of trial counsel due to counsel's:
        a.      failure to investigate and interview known witnesses;
        b.      failure to turn over to defendant his own medical records and report from the Forensic Center so that defendant could assist in his own defense;
        c.      failure to request a private investigator as requested by defendant;
        d.      failure to request an independent forensic exam of defendant's competency to stand trial;
        e.      failure to investigate an insanity or temporary insanity defense;
        f.      failure to inform the court that defendant was on psychotropic medications which rendered defendant unable to make a knowing, intelligent and voluntary plea; and
        g.      failure to request a dismissal of charges for violation of the "180-day rule."

In connection with issue two, appellate counsel asserted that no *Ginther* hearing[1] was necessary to develop a record to evaluate the ineffective assistance of trial counsel claims because considerable support existed in the record.  The Michigan Court of Appeals denied the application for lack of merit on the grounds presented.  *People v. Bennerman*, No. 248987 (Mich. Ct. Appeals July, 11, 2003) (unpublished).  Petitioner filed an application for leave to appeal to the Michigan Supreme Court, which was denied because the court was not persuaded that the questions presented should be reviewed.  *People v. Bennerman*, 469 Mich. 989 (2003).

Subsequently, Petitioner filed a post-conviction motion for relief from judgment pursuant to Michigan Court Rule 6.502 in which he raised the following issues:

1.      Ineffective assistance of counsel at the preliminary examination for failure to appeal the denial of defendant's motion to quash the bindover and to dismiss the information, and for failure to object to the long 134-day delay between arraignment and preliminary examination.

---

[1]In Michigan, a hearing on a claim of ineffective assistance of counsel is known as a *Ginther* hearing.  *See People v. Ginther*, 390 Mich. 436 (1973).

2.        Ineffective assistance of counsel for failure to follow up and arrange for court-ordered independent psychological evaluation of defendant.

3.        Ineffective assistance of counsel for failure to explain nature of charges and consequences of pleading guilty and failure to inform the court that defendant was on psychotropic medications which rendered defendant unable to make a knowing, intelligent and voluntary plea.

4.        Ineffective assistance of counsel for failure to assert defendant's right to speedy trial where defendant was held for 451 days before a trial/plea had taken place.

5.        Defendant's right to access to the court, equal protection and due process rights were denied by the court and the prosecutor for refusal to produce certain records requested by defendant after his conviction.

6.        Ineffective assistance of appellate counsel for failure to investigate and raise all ineffective assistance of trial counsel claims.

7.        Ineffective assistance of appellate counsel for failure to investigate and raise the issue of the involuntariness of defendant's confession.

In addition, Petitioner made repeated requests for a *Ginther* hearing. Petitioner also simultaneously filed a Motion to Withdraw Plea and a Motion for an Evidentiary Hearing to develop a record relating to his claims of ineffective assistance of counsel. On November 9, 2004, the trial court denied all relief. It found that defendant failed to establish cause for failure to previously raise the issues in his direct appeal. The court further found that defendant failed to establish prejudice because he had failed to demonstrate that the plea was involuntary. With such findings, the trial court held that defendant failed to establish the cause and prejudice required by M.C.R. 6.508(D). *People v. Bennerman,* No. 01-8673-01 (Wayne County Cir. Ct. Nov. 9, 2004) (unpublished). Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims. The court denied leave to appeal for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bennerman*, No. 262481 (Mich. Ct. App. Dec. 6, 2005) (unpublished). Petitioner filed an

application for leave to appeal with the Michigan Supreme Court, which it denied for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Bennerman*, 475 Mich. 885 (2006). No state court held an evidentiary hearing on Petitioner's ineffective assistance of counsel claims.

Petitioner then filed the pending petition for a writ of habeas corpus, raising many of the same claims raised on direct review and on collateral review in state court:

I.     Ineffective assistance of defense counsel at the preliminary examination. Counsel failed to appeal the Honorable Vonda Evans' decision to deny the defense motion to quash the bind-over and to dismiss the information to the Circuit Court. Defense counsel's failure to motion the court on the very long delay in conducting a preliminary examination, where said hearing did not occur until 134 [days] after the District Court arraignment.

II.     Ineffective assistance of trial counsel for counsel's failure to follow-up and arrange a court ordered independent psychologist evaluation for the Petitioner.

III.     Ineffective assistance of trial counsel for not explaining adequately the nature of the charges and the consequences of pleading guilty. Trial counsel was ineffective for not informing the court that Petitioner was on psycho tropic drugs during the taking of the plea.

IV.     Ineffective assistance of trial counsel for failure to assert the right to a speedy trial on behalf of Petitioner on the grounds that the Petitioner was held 451 days before a trial/plea had taken place.

V.     Petitioner's right of access to the courts, equal protection and due process rights have been denied by the court and the prosecutor.

VI.     Ineffective assistance of appellate counsel for failing to investigate and raise all ineffective assistance of defense counsel claims.

VII.     Ineffective assistance of appellate counsel for failing to investigate and raise the issue of involuntariness of the Petitioner's confession.

VIII.     The trial court abused its discretion [in] denying Petitioner's motion to withdraw his plea made prior to sentencing where Petitioner had a fair and just reason to support plea withdrawal and the prosecution did not demonstrate substantial prejudice in reliance on the plea.

IX.     Petitioner's plea and sentence must be set aside where his attorney rendered constitutionally ineffective assistance of counsel and there is a reasonable probability that the outcome would have been different.

## II. STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, a petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Simply stated, under § 2254(d), a petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively

unreasonable." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002).

## III. DISCUSSION

### A. Withdrawal of Plea (Claims III, VIII and IX)

Petitioner claims that the trial court abused its discretion in denying his request to withdraw his guilty plea because it was unknowing. In a related argument, Petitioner argues that his plea was involuntary because counsel coerced him into pleading guilty.[2] Initially, the Court observes that Petitioner has no federal constitutional right or absolute right under state law to withdraw his guilty plea. *See Adams v. Burt,* 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) (internal citations omitted). Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea is discretionary with the state trial court. *See Hoffman v. Jones,* 159 F. Supp. 2d 648, 655 (E.D. Mich. 2001).

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.' " *Bousley v. United States,* 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea is voluntary if the accused understands the nature of the

---

[2]Petitioner frames parts of his arguments as ineffective assistance of counsel claims. However, at bottom, Petitioner is arguing that his plea should be set aside because it was not knowing or voluntary. In any event, because the court finds no coercion and no fault on the part of counsel for not informing the court of Petitioner's alleged use of medications, an ineffective assistance of counsel claim based on either allegation would also fail.

charges against him and the constitutional protections that he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976). A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748 (1970). The state bears the burden of showing that the petitioner's plea was voluntary, intelligent and knowing. *Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004), *vacated in part on other grounds by Bradshaw v. Stumpf*, 545 U.S. 175 (2005). When a petitioner brings a federal habeas petition challenging his guilty plea, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. *Id.* Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* at 328. A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *Hoffman,* 159 F. Supp. 2d at 655-56. Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005).

In this case, the court of appeals affirmed Petitioner's conviction and sentence in a one-sentence order. "[W]here the state court decides a claim on the merits but does not articulate its reasons for its decision," a reviewing habeas court must "conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination

of the facts in light of the evidence presented." *Steward v. Erwin*, 503 F.3d 488, 494 (6th Cir. 2007) (citations omitted).

Petitioner pled guilty to second-degree murder and agreed to a sentence agreement of forty to sixty years, which was within the guideline range. Plea Tr., p. 3 (6/10/02).

THE COURT: Your attorney and [the] prosecutor indicate[] that you want to plead to second degree murder. Is that what you mean to do?

THE DEFENDANT: Yes, sir.

THE COURT: That offense has a maximum penalty of life. There is a sentence agreement requiring that you serve 40 to 60 years with the Michigan Correctional Department. Is that your understanding?

THE DEFENDANT: Yes, sir.

THE COURT: Is that what you want to do?

THE DEFENDANT: Yes, sir.

THE COURT: Now, aside from the sentence agreement and the reduction in the charge have any other promises been made to you?

THE DEFENDANT: No, sir.

THE COURT: Threats made to you?

THE DEFENDANT: No, sir.

THE COURT: Are you making this offer [sic] freely and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that if the – if your plea is accepted, you would be giving up certain constitutional rights?

THE DEFENDANT: Yes, I do.

THE COURT: Give up the right to have a trial before a judge or a judge and jury. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT:  You give up the right to be presumed innocent.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You give up the right to have the prosecutor prove each element of the offense that you're charged with beyond a reasonable doubt.  Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: You give up the right to present witnesses on your own behalf.  Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: You give up the right to remain silent.  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You give up the right to testify on your own behalf.  Do you understand that?

THE DEFENDANT: Yes.

* * *

THE COURT: Now, did you understand all of the rights as I've explained them to you?

THE DEFENDANT: Yes, I do.

THE COURT: Do you have any questions regarding those rights?  Do you have any questions?

THE DEFENDANT: No.

THE COURT: Understanding those rights do you want me to accept your plea?

THE DEFENDANT: Yes, I do.

*Id.*, pp. 5-7.  The court accepted the plea.  *Id.,* p. 10.

At sentencing, Petitioner requested to set aside his plea. He claimed to have been on "psychotropic drugs" and that he was coerced. Sent. Tr., p. 3 (6/26/02). The court rejected this request and expressly found that Petitioner's plea was given freely and voluntarily. *Id.*

There is no evidence in the record that the plea was coerced. Petitioner stated on the record at his plea hearing that he understood the nature of the charges against him, the consequences of pleading, and that no threats had been made to get him to plead guilty and that he was pleading freely and voluntarily. Petitioner's bare claim that his counsel coerced him into pleading guilty is insufficient to overcome the presumption of truthfulness which attaches to statements made during the plea colloquy, in which he denied that any threats had been used to get him to enter his plea. *See, e.g., Restucci v. Spencer,* 249 F. Supp. 2d 33, 45-46 (D. Mass. 2003) (refusing to rely on petitioner's self-serving affidavits stating the counsel and family members coerced him into pleading guilty that flew in face of plea colloquy); *see also Heiser v. Ryan,* 813 F. Supp. 388, 401-03 (W.D. Pa. 1993) (rejecting petitioner's claim that counsel coerced his guilty plea by threatening to withdraw from the case, where the petitioner indicated during the plea colloquy that his plea was voluntary).

Petitioner alleges that he had prescriptions for Remeron, Seroquel and Zoloft. He then cites to the Physician's Desk Reference which describes the potential side effects of these medications and asserts that his plea was involuntary and unknowing because he pled while under the influence of these medications. The fact that some patients who takes these drugs experience side effects relating to impaired judgment does not mean that Petitioner's judgment was impaired at the time of his plea.

In the petition, Petitioner concedes that he was found competent to stand trial.[3]  Further, the record reflects that Petitioner was rational and lucid during the plea hearing.  Petitioner testified that he understood the nature and consequences of his plea.  The evidence the Petitioner submitted is insufficient to carry his burden of overcoming the presumption that his plea was voluntary, intelligent and knowing as evidenced by the plea colloquy.  Because Petitioner's plea was not coerced and was voluntary and knowing within the meaning of Supreme Court precedent, the state court decisions on this issue were neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Petitioner is therefore not entitled to habeas relief on Claims III, VIII or IX.

## B.  Ineffective Assistance of Trial Counsel (Claims I, II, IV)

Petitioner argues that his trial counsel was constitutionally ineffective at the preliminary examination (Claim I); for failing to arrange for a court-ordered independent psychological evaluation of Petitioner to support an insanity defense (Claim II); and for failing to file a speedy trial motion (Claim IV).  As a preliminary matter, Respondent argues that Petitioner procedurally defaulted these claims because he raised them for the first time in his post-conviction motion.  The court finds that Petitioner argued on direct appeal that trial counsel failed to investigate an insanity defense, which would encompass Claim II.  Claim II is therefore not procedurally defaulted.  Petitioner did not raise Claims I and IV in his direct appeal.

_____

[3]As will be discussed further below, Petitioner now claims that counsel was ineffective for failing to request an independent competency examination.

However, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525; *cf.* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.") In this case, the court finds that the interests of judicial economy are best served by addressing Claims I and IV.[4]

The Sixth Amendment guarantees the accused in a criminal proceeding the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* established a two-part test for evaluating claims of ineffective assistance. First, a defendant must show that counsel's performance was deficient by demonstrating that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance. To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in

---

[4]For the same reason, the court will address Claim V, which was also raised for the first time in Petitioner's post-conviction motion.

criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 497 U.S. 759, 771 (1970)).  In the context of assistance of counsel claims arising out of the plea process, the *Strickland* prejudice requirement is satisfied when a defendant can show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill*, 474 U.S. at 59.

### 1.  Failure to Investigate an Insanity Defense (Claim II)

Petitioner was initially represented by appointed counsel Mark Magidson.  Following a competency evaluation and hearing, Petitioner was found competent to stand trial on June 26, 2001.  On August 28, 2001, counsel filed a Notice of Defense of Insanity and requested that Petitioner "be referred to the Circuit Court Forensic Clinic and that depending upon the result of that report, he may request that he be provided funds to retain an independent opinion."  In response, Judge Vonda Evans issued an order on November 19, 2001 appointing Eric Amburg, an independent psychologist, to examine Petitioner and provide a report at County expense.  On December 19, 2001, Attorney Magidson filed a motion to withdraw as Petitioner's attorney, which was granted.  Judge Evans appointed Luther Glenn to serve as Petitioner's new lawyer.  On February 1, 2002, a motion to disqualify Judge Evans was heard and granted.  On February 6, 2002, Judge Prentis Edwards was assigned by random draw to Petitioner's case.  On June 10, 2002, Judge Edwards accepted Petitioner's guilty plea.

There is no indication in the record of compliance with Judge Evans' November 19, 2001 order for an independent psychological evaluation.  Petitioner asserts that he was denied the effective assistance of counsel for counsel's failure to carry out Judge Evans' order and to otherwise investigate an insanity defense.  In determining whether counsel made serious errors,

"strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable...." *Strickland,* 466 U.S. at 690. "However, a failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted." *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 690-91.

Based on the record filed with the petition, the court was unable to determine whether attorney Glenn made a strategic decision that an investigation was not warranted or failed to make a reasonable investigation into Petitioner's only potentially viable defense. The court appointed counsel for Petitioner and an evidentiary hearing was held on November 13, 2009.

Prior to the hearing, Respondent supplemented the record with an October 2, 2001 report from psychiatrist Dexter Fields. Dr. Fields was the chief psychiatrist of the Third Circuit Court Psychiatric Clinic. Dr. Fields concluded that Petitioner was not mentally ill or mentally retarded at the time of the offense and could be held criminally responsible for his actions.

At the hearing, attorney Luther Glenn testified that he read a June 11, 2001 competency report prepared by Dr. Angela May of the Third Circuit Court Psychiatric Clinic, which concluded Petitioner was competent to stand trial. Evid. Hrg. Tr., p. 9 (11/13/09). Mr. Glenn also testified that in light of the overwhelming evidence against Petitioner supporting a first-degree murder charge, he believed that the offer to plead to second-degree murder was a

reasonable plea offer. *Id.*, p. 19. He believed that the likelihood of a first-degree murder conviction was very high. *Id.*, p. 20. The only issue at trial would have been Petitioner's state of mind during the crime; he could not imagine the jury reaching a not guilty verdict. *Id.*, p. 23. Mr. Glenn emphasized the horrific facts of the case, which were undisputed. Because Petitioner stabbed his wife over forty times, Mr. Glenn said that he could not imagine that Petitioner was thinking anything except that he intended to kill her. *Id.*

Another pivotal fact in Mr. Glenn's assessment of the case was Ms. Nicholson's testimony. When Ms. Nicholson told Petitioner, who was washing his hands after the forty stabs, that he had killed the victim, Petitioner returned to his wife who was actually still barely alive, said she wasn't dead and took the knife and plunged it into her chest and left it there. *Id.,* pp, 23-24. Glenn said that it was that last plunge of the knife that erased any doubt that Petitioner intended to kill his wife. *Id.*, p. 24.

Mr. Glenn did not review the October 2, 2001 report in which Dr. Fields concluded that Petitioner was criminally responsible. *Id.*, p. 15. Mr. Glenn concluded that Petitioner was not criminally insane after his pre-plea interactions with Petitioner, during which they discussed what happened. *Id.*, pp. 13, 16. Mr. Glenn has been a criminal defense lawyer since 1988. In all of his years of practice, he was familiar with one case in which the defendant was found not guilty by reason of insanity. *Id.*, p. 32. Mr. Glenn testified that he assessed his client against the legal standard for insanity in Michigan before reaching his conclusion that Petitioner was criminally responsible. *Id.*, pp. 27-28. He believed that Petitioner acted rationally because his motive in killing was his wife's infidelity. *Id.,* pp. 28-29. There was also evidence that Petitioner planned the murder, it wasn't random. *Id.*, p. 30. Mr. Glenn concluded that Petitioner

acted in a way that demonstrated he knew right from wrong.  *Id.,* pp. 30-31.  For these reasons, he concluded that Petitioner was criminally responsible and not insane at the time of the crime.

The court finds that attorney Glenn's performance was reasonable and not deficient.  This is not a case in which there was a wholesale failure to investigate or consider a potential defense. While attorney Glenn's failed to review the October 2, 2001 report by Dr. Fields, this error was harmless given that he and Dr. Fields reached the same conclusion that Petitioner was criminally responsible.  "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."  *Rompilla v. Beard,* 545 U.S. 374, 383 (2005).  In this case, it was not unreasonable for Glenn to rely upon his experience and his assessment of the potential viability of an insanity defense in advising Petitioner to accept the plea offer given the facts of the case.  The advice was sound strategy – the plea agreement avoided a near certain first-degree murder conviction and prison sentence of life without the possibility of parole. Counsel's performance was not deficient, the state court decisions on this issue were not contrary to federal law and Petitioner is not entitled to habeas relief on Claim II.

Subsequent to the evidentiary hearing, Petitioner raised a modified argument:  that the November 21, 2001 order for an independent psychological evaluation of Petitioner was intended to assess competency to stand trial and that his habeas claim alleged the ineffective assistance of counsel for failure to seek an independent competency evaluation as opposed to an evaluation of criminal responsibility.  This change in argument coincides with the submission of a report by Dr. Steven Miller, a psychologist who examined Petitioner following the November 2009 evidentiary hearing, which concludes that Petitioner was not criminally insane at the time of the commission of the offense but was "probably, incompetent to stand trial or to enter a

plea." Dr. Miller's conclusion on criminal insanity forecloses any argument that attorney Glenn's performance caused prejudice under *Strickland*. Petitioner now attempts to utilize Dr. Miller's conclusion on competency by shifting the focus of his ineffective assistance of counsel claim.

Petitioner asserts that the purpose of the November 21, 2001 order for an independent evaluation was ambiguous. This assertion is based upon a misinterpretation of the procedural history of the case. He contends that defense counsel requested an independent evaluation of Petitioner after receiving the results of two evaluations by the county forensic center -- the first finding Petitioner competent to stand trial and the second finding him criminally responsible. Pet's Supp. Br., pp. 2-3 (Dkt. #39). Instead, the record reflects the independent evaluation was requested after the first report on Petitioner's competency was issued on June 11, 2001and followed defense counsel's filing of a Notice of Insanity in August 2001. The Notice provided that Petitioner intended to use or might use the defense of insanity. It also indicated that "Defendant has requested that he be referred to the Circuit Court Forensic Clinic and depending on the result of that report, he may request that he be provided funds to retain an independent opinion." Dexter Fields issued the criminal responsibility report on behalf of the county forensic center in October 2001. The court issued the order for an independent evaluation issued in November 2001. In light of the contents of the Notice of Insanity, the intent of the November 2001 order seems to clearly contemplate an independent evaluation of Petitioner's criminal responsibility.

The Court notes that at no time prior to or during the November 2009 evidentiary hearing did Petitioner's counsel alert the court that it had incorrectly focused on whether the independent

evaluation of Petitioner would have revealed a valid insanity defense and that Claim II of the petition raised an ineffective assistance of counsel claim for failure to pursue an independent competency evaluation.  As noted above, it was not until Dr. Miller concluded that Petitioner was not legally insane but "probably, incompetent to stand trial or to enter a plea" that counsel brought this lack of focus to the court's attention.

Attorney Glenn testified that he reviewed Dr. May's June 11, 2001 report, which concluded that Petitioner was competent to stand trial.  The report found:

> Current mental status examination reveals a well-nourished, well-developed male, who is of tall height with slim body build.  He stand 6 feet tall, weighing 190 pounds.  He was attired in standard jail clothing with adequate attention to personal hygiene and grooming.  He was alert, clear-minded, spoke in a clear and rational manner and was oriented to time, place and person.  His affect was appropriate, and he did not have difficulty communicating with the examiner.  There was no evidence of hallucinations or delusions on interview, however, he did appear to be somewhat anxious, as he would often glance at the office door whenever he heard noises or persons passing by.  His thoughts were presented as clear, goal-directed, realistic and rational, and he was aware of the purpose of a competency evaluation.  He expressed this by stating that he was here to see this examiner because, "to see if I'm fit to go to trial."  Mr. Bannerman [sic] tested in the upper range of the mildly mentally retarded level of functioning.  However, considering that his final full-scale score placed him at only one point below the borderline range of intellectual functioning, it is more likely that he functions within the borderline range of intelligence, rather than he is actually mentally retarded.  He had no difficulty expressing himself or understanding what was being conveyed during the interview.
>
> * * *
>
> In an effort to demonstrate the level of his anxiety and need for [psychiatric] treatment, Mr. Bannerman [sic], on several occasions, would open the upper part of his shirt to show the numerous markings on his chest, which were the result of anxious scratching on his part.  Throughout the evaluation it was noted that he would physically rock his body back and fourth [sic], and scratched himself on his arms and chest constantly.
>
> * * *
>
> At the conclusion of the evaluation, Mr. Bannerman asked if he were considered competent, to which this examiner replied, that he appeared to be able to stand

> trial. At the point, he immediately stopped the constant body rocking, in which
> he had engaged throughout the previous two and a half hours of the evaluation.
> Also noted was the fact the he also stopped scratching, and appeared to suddenly
> bec[a]me very calm. . . . Mr. Bannerman [sic] appears to have been malingering
> throughout he psychiatric evaluation.

June 11, 2001 Report, pp. 2-4.

Assuming *arguendo*, that the ineffective assistance of counsel claim encompasses the failure to seek an independent competency evaluation, Petitioner fails to establish that his counsel's performance was deficient in light of the conclusions in May's report, which counsel reviewed. Petitioner does not address the contents of May's report in arguing that Attorney Glenn performed deficiently. Moreover, Petitioner's first defense counsel stipulated to entry of May's report at the June 26, 2001 competency hearing. Hrg. Tr. (6/26/01), pp. 3-4. At the time Petitioner entered his guilty plea, competency to stand trial was simply not at issue. Because Petitioner cannot meet his burden of showing deficient performance under the *Strickland/Hill* test, the state court decisions on this issue were neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner is therefore not entitled to habeas relief on Claim II.

### 2. Counsel's Performance Before Plea (Claims I and IV)

Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are normally foreclosed by that plea. See *United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has
> preceded it in the criminal process. When a criminal defendant has
> solemnly admitted in open court that he is in fact guilty of the
> offense with which he is charged, he may not thereafter raise

> independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett,* 411 U.S. at 267. Simply stated, a defendant who pleads guilty generally waives any non-jurisdictional claims that arose before his plea. In such a case, the Court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary. *Broce*, 488 U.S. at 569.

This court has concluded that Petitioner's plea was knowing, intelligent and voluntary. In Claim I, Petitioner complains that counsel failed to appeal an adverse ruling on a motion to dismiss the information. In Claim IV, Petitioner argues that trial counsel was ineffective for failing to assert his right to a speedy trial. These claims do not implicate the voluntary and intelligent nature of his plea and are therefore waived by Petitioner's valid guilty plea. *Cf. Blackwell v. United States*, 2008 WL 4619801, *5 (S.D. Ohio Oct. 15, 2008) (entry of valid guilty plea waived claim that trial counsel was ineffective for failing to file pre-trial suppression motions).

### C. Failure to produce documents for post-conviction litigation (Claim V)

In Claim V, Petitioner alleges that the trial court, prosecutor and defense counsel have withheld documents necessary for him to pursue post-conviction litigation. "Errors in post-conviction proceedings are outside the scope of federal habeas review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). The Sixth Circuit has consistently held that "the scope of the writ does not reach this second tier of complaints about deficiencies in state post-conviction proceedings . . . [because] the writ is not the proper means to challenge collateral matters as opposed to the underlying state conviction giving rise to the prisoner's incarceration." *Id.*

(citations omitted).  Petitioner is not entitled to habeas relief on Claim V because it is not cognizable on federal habeas review.

### D.  Ineffectiveness of Appellate Counsel (Claims VI and VII)

In his last two claims, Petitioner challenges the work of his appellate counsel as constitutionally deficient.  The right to the effective assistance of counsel includes the right to the effective assistance of appellate counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  A criminal defendant has no constitutional right to demand that appellate counsel raise every non-frivolous issue on appeal if counsel makes a professional judgment not to present such issues.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Although appellate counsel need not raise every non-frivolous issue on appeal, counsel may be deemed ineffective for omitting a "dead bang winner," i.e., an issue obvious from the trial record which would have resulted in reversal on appeal.  *Meade v. Lavigne*, 265 F.Supp.2d 849, 870 (E.D. Mich. 2003).  In challenging the work of his appellate counsel,  Petitioner must show that the claims appellate counsel failed to raise would have succeeded on appeal.  *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000) (citing *Strickland*, 466 U.S. at 694).  Petitioner has not identified a "dead bang winner."

In Claim VII, Petitioner challenges appellate counsel's failure to investigate and raise the issue of the involuntariness of Petitioner's confession to police.  Any issue concerning Petitioner's confession was waived by the entry of Petitioner's guilty plea under *Tollett*.  Moreover, during the plea hearing itself, Petitioner confessed not only to stabbing his wife but also to acting with pre-meditation and the intent to kill her.  Plea Tr., pp. 7-8.  There is no merit to Petitioner's claim.

In Claim VI, Petitioner asserts that appellate counsel should have requested a *Ginther* hearing to investigate the ineffectiveness of trial counsel. Assuming that appellate counsel's performance was deficient in this regard, Petitioner cannot establish that he suffered any prejudice. Petitioner alludes to trial counsel's failure to investigate and present unnamed meritorious defenses. However, there was a plethora of undisputed evidence that Petitioner murdered his wife. This court has determined that trial counsel acted reasonably in not pursuing an insanity defense – Petitioner does not identify any other potentially viable defense – and in advising Petitioner to accept the plea offer. Petitioner cannot establish that any ineffectiveness-of-trial-counsel claim would have succeeded on appeal and therefore cannot establish prejudice under *Strickland* for appellate counsel's decision not to raise it. Because Petitioner cannot meet his burden of showing prejudice under the *Strickland* test, the state court decisions on this issue were neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner is therefore not entitled to habeas relief on Claim VI and VII.

## IV. CONCLUSION

The court will deny the petition for a writ of habeas corpus. In accordance with recently amended Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254, this court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court has rejected constitutional claims on the merits, the substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court finds that reasonable jurists could find the court's decision to deny the petition debatable or wrong. The court will therefore grant a certificate of appealability on all claims.

## V.  ORDER

The Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**   A Certificate of Appealability is **GRANTED** with respect to all claims.

**IT IS SO ORDERED.**


**S/Arthur J. Tarnow**
**Arthur J. Tarnow**
**United States District Judge**
**Dated:  March 9, 2010**

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on March 9, 2010, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary